# EXHIBIT E



**GERBER FINANCE INC.**
488 Madison Avenue
New York, NY 10022
Tel: (212) 888-3833
Fax: (212) 888-1637

August 9, 2019

Volume Snacks Inc.
1948 Hays Lane
Woodland CA 95776
Attn: Denise O'Brien

Ladies and Gentlemen:

Reference is made to the Loan and Security Agreement, dated as of February 15, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement") between Gerber Finance Inc. ("Lender") and Volume Snacks ("Borrower") pursuant to which Lender provides Borrower with certain financial accommodations. Capitalized terms used in this letter agreement and not otherwise defined herein have the meanings ascribed to them in the Loan Agreement.

The amount of Revolving Credit Advances under the Loan Agreement exceeds the Borrowing Base (an "Overadvance") in an amount at least equal to $3,000,000. The Overadvance constitutes an Event of Default (the "Existing Default"). In order to induce Lender to refrain from exercising its rights with respect to the Existing Default, Borrower obtained an assurance letter (the "Barcel Assurance Letter") executed by Barcel USA, LLC ("Barcel") with respect to amounts due to Borrower from Barcel as a termination payment under the Distribution Agreement effective as of November 9, 2015 between Borrower and Barcel (the "Barcel Distribution Agreement").

Borrower hereby acknowledges, confirms and agrees that (a) as of the close of business on August 8, 2019, Borrower is indebted to Lender in respect of the Revolving Credit Advances in the aggregate principal amount of $7,060,324.63 (b) all such Loans, together with interest accrued and accruing thereon, and fees, costs, expenses and other charges now or hereafter payable by Borrower to Lender, are unconditionally owing by Borrower to Lender, without offset, defense or counterclaim of any kind, nature or description whatsoever Borrower, (c)Lender has and shall continue to have valid, enforceable and perfected Liens to secure the Revolving Credit Advances and all other Obligations upon and in the Collateral and any other assets heretofore granted to Lender pursuant to the Credit Documents or otherwise granted to or held by Lender and such Liens are prior to all other Liens on the Collateral and such other assets except for Permitted Liens which have priority by operation of law.

18030094.1
204043-10106

In reliance upon the representations, warranties and covenants of Borrower contained in this letter agreement, and subject to the terms and conditions of this letter agreement and any documents or instruments executed in connection herewith, Lender agrees to forbear from exercising its rights and remedies under the Credit Documents or applicable law in respect of or arising out of the Existing Default, subject to the conditions, amendments and modifications contained herein for the period (the "Forbearance Period") commencing on the date hereof and ending on the earlier of: (i) November 15, 2019 or (ii) the occurrence or existence of any Event of Default other than the Existing Defaults.

Upon the termination of the Forbearance Period, the agreement of Lender to forbear shall automatically and without further action terminate and be of no force and effect, it being expressly agreed that the effect of such termination will be to permit Lender to exercise such rights and remedies immediately, including, but not limited to, (i) ceasing to make any further Loans and (ii) the acceleration of all of the Obligations; in either case without any further notice, passage of time or forbearance of any kind.

Lender has not waived, is not by this letter agreement waiving, and has no intention of waiving, any Event of Default which may be continuing on the date hereof or any Event of Default which may occur after the date hereof (whether the same or similar to the Existing Default or otherwise), and Lender has not agreed to forbear with respect to any of its rights or remedies concerning any Event of Default (other than, during the Forbearance Period, the Existing Default to the extent expressly set forth herein), which may have occurred or are continuing as of the date hereof or which may occur after the date hereof.

Borrower hereby represents, warrants and covenants with and to Lender as follows: (a) this letter agreement and the other Credit Documents have been duly executed and delivered to Lender and are in full force and effect, as modified hereby; (b) the execution and delivery and performance of this letter agreement by Borrower will not violate any Requirement of Law or Contractual Obligation of Borrower and will not result in, or require, the creation or imposition of any Lien on any of Borrower's properties or revenues; and (c) any misrepresentation by Borrower, or any failure of Borrower to comply with the covenants, conditions and agreements contained in any Credit Document, in this letter agreement or in any other agreement, document or instrument at any time executed and/or delivered by Borrower with, to or in favor of Lender shall constitute an Event of Default hereunder, under the Credit Agreement and the other Credit Documents and shall result in the termination of the Forbearance Period.

During the Forbearance Period, (a) the "Borrowing Base" shall consist of an amount equal to the sum at such time of: (i) Accounts Availability; plus (ii) Inventory Availability; plus (iii) the amount of the Overadvance not to exceed $3,500,000; minus (iv) the Reserves, including without limitation, the amount of Letter of Credit Obligations; (b) the cap on Inventory Availability shall be increased to 125% of the amount of Accounts Availability; and (c) the advance rate of Eligible Accounts which are from distributors shall be 50%

In addition, during the Forbearance Period, Lender is requiring that on Wednesday of each week, Borrower shall provide Lender with the following information which information shall have been reviewed by Borrower's consultants, BDO Consulting: (i) detailed status of amounts owed to Barcel, including, without limitation, invoice numbers, by Borrower and amounts paid each week by Borrower to Barcel as of Friday of the immediately preceding week; (ii) any outstanding checks payable to Barcel with applicable details; and (iii) a calculation of the termination payment described in Section 9(a) of the Distribution Agreement. as of the Friday of the immediately preceding week on the spreadsheet attached hereto as Exhibit A. Borrower shall also not release checks or other payments

until Borrower has confirmed that the payment of such amounts shall not result in an overdraft in Borrower's bank accounts (i.e. there are sufficient funds in such accounts after giving effect to all other checks drawn on such account to make payment on all outstanding checks). In addition, Borrower confirms that all payments that it receives from whatever source, including, without limitation, all payments with respect to the Barcel Distribution Agreement whether in the form of a termination payment, inventory buyback or otherwise shall be deposited by Borrower or cause to be deposited by Borrower into the Blocked Account.

The effectiveness of the terms and provisions of this letter agreement shall be subject to the receipt by Lender of an original of this letter agreement, in form and substance satisfactory to Lender, duly authorized, executed and delivered by Borrower and each Guarantor.

Except as modified pursuant hereto, no other changes or modifications to the Credit Documents are intended or implied and in all other respects the Credit Documents are hereby specifically ratified, restated and confirmed by all parties hereto as of the effective date hereof. To the extent of conflict between the terms of this letter agreement and the other Credit Documents, the terms of this letter agreement shall control. The Loan Agreement and this letter agreement shall be read and construed as one agreement.

In addition to Borrower's existing obligations under the Credit Documents to pay the costs and expenses of Lender, Borrower absolutely and unconditionally, jointly and severally, agree to pay to Lender, on demand by Lender at any time and as often as the occasion therefor may require, whether or not all or any of the transactions contemplated by this letter agreement are consummated: all fees and disbursements of any counsel to Lender in connection with the preparation, negotiation, execution, or delivery of this letter agreement and any agreements delivered in connection with the transactions contemplated hereby and expenses which shall at any time be incurred or sustained by Lender or any participant of Lender or any of their respective directors, officers, employees or agents as a consequence of or in any way in connection with the preparation, negotiation, execution, or delivery of this letter agreement and any agreements prepared, negotiated, executed or delivered in connection with the transactions contemplated hereby.

The parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this letter agreement. This letter agreement shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors and assigns.

In consideration of the agreements of Lender contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower, on behalf of itself and its heirs, administrators, executors, successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender, and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Lender and all such other Persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which such Borrower or any of its respective heirs, administrators, executors, successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to

the day and date of this letter agreement, including, without limitation, for or on account of, or in relation to, or in any way in connection with any of the Loan Agreement, or any of the other Credit Documents or transactions thereunder or related thereto. Borrower understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release. Borrower agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above. Borrower, on behalf of itself and its respective heirs, administrators, executors, successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably, covenants and agrees with and in favor of each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Claim released, remised and discharged by such Person pursuant hereto. If Borrower or any of its heirs, administrators, executors, successors, assigns or other legal representations violates the foregoing covenant, each Person, for itself and its successors, assigns and legal representatives, agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

Any provision of this letter agreement held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this letter agreement. Borrower represents and warrants to Lender that it (a) understands fully the terms of this letter agreement and the consequences of the execution and delivery of this letter agreement, (b) has been afforded an opportunity to have this letter agreement reviewed by, and to discuss this letter agreement and document executed in connection herewith with, such attorneys and other persons as Borrower may wish, and (c) has entered into this letter agreement and executed and delivered all documents in connection herewith of its own free will and accord and without threat, duress or other coercion of any kind by any Person. The parties hereto acknowledge and agree that neither this letter agreement nor the other documents executed pursuant hereto shall be construed more favorably in favor of one than the other based upon which party drafted the same, it being acknowledged that all parties hereto contributed substantially to the negotiation and preparation of this letter agreement and the other documents executed pursuant hereto or in connection herewith.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN ANY OF THE CREDIT DOCUMENTS, IN ALL RESPECTS, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS LETTER AGREEMENT AND THE OTHER CREDIT DOCUMENTS AND THE OBLIGATIONS ARISING UNDER THE CREDIT DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE, WITHOUT REGARD TO THE PRINCIPLES THEREOF REGARDING CONFLICTS OF LAWS, AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. BORROWER HEREBY CONSENTS AND AGREES THAT THE STATE OR FEDERAL COURTS LOCATED IN NEW YORK COUNTY, STATE OF NEW YORK SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN BORROWER AND LENDER PERTAINING TO THIS LETTER AGREEMENT OR ANY OF THE OTHER CREDIT DOCUMENTS OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS LETTER AGREEMENT OR ANY OF THE OTHER CREDIT DOCUMENTS; PROVIDED, THAT LENDER AND BORROWER ACKNOWLEDGE THAT ANY APPEALS FROM THOSE COURTS MAY HAVE TO BE HEARD BY A COURT LOCATED OUTSIDE OF NEW YORK; AND FURTHER PROVIDED, THAT NOTHING IN THIS LETTER AGREEMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE LENDER FROM

BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO COLLECT THE OBLIGATIONS, TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE OBLIGATIONS, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF LENDER.  BORROWER EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND BORROWER HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT.  BORROWER HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS, COMPLAINT AND OTHER PROCESS ISSUED IN ANY SUCH ACTION OR SUIT AND AGREES THAT SERVICE OF SUCH SUMMONS, COMPLAINTS AND OTHER PROCESS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PERSON AT THE ADDRESS SET FORTH IN THE LOAN AGREEMENT AND THAT SERVICE SO MADE SHALL BE DEEMED COMPLETED UPON THE EARLIER OF SUCH PERSON'S ACTUAL RECEIPT THEREOF OR THREE (3) DAYS AFTER DEPOSIT IN THE U.S. MAILS, PROPER POSTAGE PREPAID.

BECAUSE DISPUTES ARISING IN CONNECTION WITH COMPLEX FINANCIAL TRANSACTIONS ARE MOST QUICKLY AND ECONOMICALLY RESOLVED BY AN EXPERIENCED AND EXPERT PERSON AND THE PARTIES WISH APPLICABLE STATE AND FEDERAL LAWS TO APPLY (RATHER THAN ARBITRATION RULES), THE PARTIES DESIRE THAT THEIR DISPUTES BE RESOLVED BY A JUDGE APPLYING SUCH APPLICABLE LAWS.  THEREFORE, TO ACHIEVE THE BEST COMBINATION OF THE BENEFITS OF THE JUDICIAL SYSTEM AND OF ARBITRATION, THE PARTIES HERETO WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE, WHETHER ARISING IN CONTRACT, TORT, OR OTHERWISE BETWEEN LENDER AND BORROWER ARISING OUT OF, CONNECTED WITH, RELATED OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS LETTER AGREEMENT OR ANY OF THE OTHER CREDIT DOCUMENTS OR THE TRANSACTIONS RELATED THERETO.

This letter agreement may be executed in any number of counterparts, but all of such counterparts shall together constitute but one and the same agreement.  This letter agreement may be executed by signatures delivered by facsimile or electronic mail, each of which shall be fully binding on the signing party.

Very truly yours,

GERBER FINANCE INC.

By:_____
    Name: Tammy Rouah
    Title: Vice President

ACCEPTED AND AGREED TO:

VOLUME SNACKS

By:_____
    Name: Denise moBnen
    Title: President

_____
Denise O'Brien, individually

_____
Tracy Freeman, individually

# EXHIBIT A

**Barcel Termination Estimate Calculation**
(as of August 6, 2019)

**DeRosa DSD**

| Month | Derosa DSD 2019 | Derosa DSD 2018 |
|---|---|---|
| Jan | $ 1,628,000 | $ 2,211,842 |
| Feb | $ 2,087,000 | $ 1,730,016 |
| Mar | $ 1,378,000 | $ 1,921,814 |
| Apr | $ 1,619,000 | $ 1,772,301 |
| May | $ 1,958,000 | $ 1,713,863 |
| Jun | $ 1,697,000 | $ 1,789,121 |
| Jul | $ 2,269,000 | $ 1,334,406 |
| Aug | $ 1,323,466 | $ 860,186 |
| Sep | | $ 1,433,661 |
| Oct | | $ 2,324,057 |
| Nov | | $ 1,496,463 |
| Dec | | $ 1,722,691 |
| Total | $ 13,909,466 | $ 20,318,721 |

**DeRosa CDC**

| Month | Derosa CDC 2019 | Derosa CDC 2018 |
|---|---|---|
| Jan | $ 220,000 | $ 342,998 |
| Feb | $ 354,000 | $ 224,656 |
| Mar | $ 176,000 | $ 224,906 |
| Apr | $ 350,000 | $ 181,598 |
| May | $ 301,000 | $ 512,515 |
| Jun | $ 168,000 | $ 259,454 |
| Jul | $ 301,000 | $ 244,839 |
| Aug | $ 223,694 | $ 222,414 |
| Sep | | $ 300,413 |
| Oct | | $ 225,748 |
| Nov | | $ 282,068 |
| Dec | | $ 278,117 |
| Total | $ 2,093,694 | $ 3,299,726 |

**Consolidated Total**

| Month | Combined 2019 | Combined 2018 |
|---|---|---|
| Jan | $ 1,848,000 | $ 2,554,840 |
| Feb | $ 2,391,000 | $ 1,963,672 |
| Mar | $ 1,554,000 | $ 2,146,020 |
| Apr | $ 1,969,000 | $ 1,953,899 |
| May | $ 2,259,000 | $ 2,226,378 |
| Jun | $ 1,865,000 | $ 2,048,575 |
| Jul | $ 2,570,000 | $ 1,579,245 |
| Aug | $ 1,547,160 | $ 1,182,600 |
| Sep | $ - | $ 1,734,074 |
| Oct | $ - | $ 2,349,805 |
| Nov | $ - | $ 1,778,531 |
| Dec | $ - | $ 2,000,808 |
| Total | $ 16,003,160 | $ 23,518,447 |

| | |
|---|---|
| Trailing Twelve Months | $ 23,866,378 |
| Weekly Average | $ 458,969 |
| **Est. Termination Payment** | **$ 4,589,688** |

Offsets:
Barcel A/P Balance       $271,330
Other Offsets            _____   (Other offsets provided for in the Distribution Agreement)
Total offsets            $271,330

Credits:
Credit due Volume
Inventory Buyback        $1,334,635
Total Credits            $1,334,635

Est Termination Payment  $5,652,993