# EXHIBIT G

January 23, 2020

Volume Snacks Inc.
1948 Hays Lane
Woodland CA 95776
Attn: Denise O'Brien

Ladies and Gentlemen:

Reference is made to the Loan and Security Agreement, dated as of February 15, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement") between Gerber Finance Inc. ("Lender") and Volume Snacks ("Borrower") pursuant to which Lender provides Borrower with certain financial accommodations. Capitalized terms used in this letter agreement and not otherwise defined herein have the meanings ascribed to them in the Loan Agreement.

Lender has previously advised Borrower that certain Event of Default have occurred and are continuing under the Loan Agreement and Lender had agreed to forbear from exercising its rights and remedies with respect to such Events of Default until Borrower had an opportunity to work with its consultant, BDO Consultants (the "Consultant"), to formulate a plan on how to address Borrower's financial condition. Borrower has informed Lender that Borrower has decided to wind-down its business and has requested that Lender continue to forbear from exercising its rights and remedies and to make Revolving Credit Advances in order to assist Borrower with such wind down. Lender is willing to forbear and make additional Revolving Credit Advances upon the terms and conditions set forth in this letter agreement.

Borrower hereby acknowledges, confirms and agrees that (a) as of the close of business on January 15, 2020, Borrower is indebted to Lender in respect of the Revolving Credit Advances in the aggregate principal amount of $2,622,961.62, (b) all such Loans, together with interest accrued and accruing thereon, and fees, costs, expenses and other charges now or hereafter payable by Borrower to Lender, are unconditionally owing by Borrower to Lender, without offset, defense or counterclaim of any kind, nature or description whatsoever Borrower, (c) Lender has and shall continue to have valid, enforceable and perfected Liens to secure the Revolving Credit Advances and all other Obligations upon and in the Collateral and any other assets heretofore granted to Lender pursuant to the Credit Documents or otherwise granted to or held by Lender and such Liens are prior to all other Liens on the Collateral and such other assets except for Permitted Liens which have priority by operation of law.

Disbursements" on page 6 of the Budget for such week. It shall be a condition to each such Revolving Credit Advance that Lender receive a Borrowing Base Certificate on each Wednesday for the immediately preceding Borrowing Base Period and all other reporting reasonably requested by Lender. The fees payable under Section 5.1(b)(vi) of the Loan Agreement shall be payable by Borrower with respect to any amount by which the aggregate amount of Revolving Credit Advances including termination fees of $497,321.36 ("the Cumulative Advance") on line 11 exceeds the amount set forth on line 20 of attached Exhibit B for titled Maximum Cumulative Advances for such Borrowing Base Period (such amount, the "Overadvance"). The amount of Overadvances shall not exceed: (a) $170,000 for the week ending January 17, 2020; (b) $750,000 for the week ending January 24, 2020 (c) $700,000 for the weeks ended Jan 31st 2020 through and including February 7, 2020; (d) $500,000 for the weeks ending February 14 2020, and February 21, 2020, and (e) $0 at all times on and after February 28th, 2020. All Obligations due to Lender, including, without limitation, any early termination fees shall be due and payable no later than March 6, 2020. In the event that Borrower fails to achieve eighty five percent (85%) of the cumulative forecasted Sales and Collection as set forth on pages 6 and 7 of the Budget for the periods ending January 31, 2020 or February 28, 2020, Lender shall be entitled to exercise any and all of its rights and remedies. In addition, Lender shall be entitled to exercise any and all of its rights and remedies an Event of Default not in existence on the date of this letter agreement occurs.

In consideration of the agreements of Lender contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower, on behalf of itself and its heirs, administrators, executors, successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender, and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Lender and all such other Persons being hereinafter referred to collectively as the "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which such Borrower or any of its respective heirs, administrators, executors, successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the day and date of this letter agreement, including, without limitation, for or on account of, or in relation to, or in any way in connection with any of the Loan Agreement, or any of the other Credit Documents or transactions thereunder or related thereto. Borrower understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against

by such Person pursuant hereto. If Borrower or any of its heirs, administrators, executors, successors, assigns or other legal representations violates the foregoing covenant, each Person, for itself and its successors, assigns and legal representatives, agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

Any provision of this letter agreement held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this letter agreement. Borrower represents and warrants to Lender that it (a) understands fully the terms of this letter agreement and the consequences of the execution and delivery of this letter agreement, (b) has been afforded an opportunity to have this letter agreement reviewed by, and to discuss this letter agreement and document executed in connection herewith with, such attorneys and other persons as Borrower may wish, and (c) has entered into this letter agreement and executed and delivered all documents in connection herewith of its own free will and accord and without threat, duress or other coercion of any kind by any Person. The parties hereto acknowledge and agree that neither this letter agreement nor the other documents executed pursuant hereto shall be construed more favorably in favor of one than the other based upon which party drafted the same, it being acknowledged that all parties hereto contributed substantially to the negotiation and preparation of this letter agreement and the other documents executed pursuant hereto or in connection herewith.

THIS LETTER AGREEMENT AND THE OTHER CREDIT DOCUMENTS AND THE OBLIGATIONS ARISING UNDER THE CREDIT DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE, WITHOUT REGARD TO THE PRINCIPLES THEREOF REGARDING CONFLICTS OF LAWS, AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. BORROWER HEREBY CONSENTS AND AGREES THAT THE STATE OR FEDERAL COURTS LOCATED IN NEW YORK COUNTY, STATE OF NEW YORK SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN BORROWER AND LENDER PERTAINING TO THIS LETTER AGREEMENT OR ANY OF THE OTHER CREDIT DOCUMENTS OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS LETTER AGREEMENT OR ANY OF THE OTHER CREDIT DOCUMENTS; PROVIDED, THAT LENDER AND BORROWER ACKNOWLEDGE THAT ANY APPEALS FROM THOSE COURTS MAY HAVE TO BE HEARD BY A COURT LOCATED OUTSIDE OF NEW YORK; AND FURTHER PROVIDED, THAT NOTHING IN THIS LETTER AGREEMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE LENDER FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO COLLECT THE OBLIGATIONS, TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE OBLIGATIONS, OR TO ENFORCE

IN ANY SUCH ACTION OR SUIT AND AGREES THAT SERVICE OF SUCH SUMMONS, COMPLAINTS AND OTHER PROCESS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PERSON AT THE ADDRESS SET FORTH IN THE LOAN AGREEMENT AND THAT SERVICE SO MADE SHALL BE DEEMED COMPLETED UPON THE EARLIER OF SUCH PERSON'S ACTUAL RECEIPT THEREOF OR THREE (3) DAYS AFTER DEPOSIT IN THE U.S. MAILS, PROPER POSTAGE PREPAID.

BECAUSE DISPUTES ARISING IN CONNECTION WITH COMPLEX FINANCIAL TRANSACTIONS ARE MOST QUICKLY AND ECONOMICALLY RESOLVED BY AN EXPERIENCED AND EXPERT PERSON AND THE PARTIES WISH APPLICABLE STATE AND FEDERAL LAWS TO APPLY (RATHER THAN ARBITRATION RULES), THE PARTIES DESIRE THAT THEIR DISPUTES BE RESOLVED BY A JUDGE APPLYING SUCH APPLICABLE LAWS. THEREFORE, TO ACHIEVE THE BEST COMBINATION OF THE BENEFITS OF THE JUDICIAL SYSTEM AND OF ARBITRATION, THE PARTIES HERETO WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE, WHETHER ARISING IN CONTRACT, TORT, OR OTHERWISE BETWEEN LENDER AND BORROWER ARISING OUT OF, CONNECTED WITH, RELATED OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS LETTER AGREEMENT OR ANY OF THE OTHER CREDIT DOCUMENTS OR THE TRANSACTIONS RELATED THERETO.

Please acknowledge Borrower's agreement with the terms set forth in this letter by signing below and returning this letter to Lender. This letter agreement may be executed in any number of counterparts, but all of such counterparts shall together constitute but one and the same agreement. This letter agreement may be executed by signatures delivered by facsimile or electronic mail, each of which shall be fully binding on the signing party.

Very truly yours,

GERBER FINANCE INC.

By: _____
Name: Kevin McGarry
Title: CCO

ACCEPTED AND AGREED TO:

VOLUME SNACKS

By: _____
Name: Denise M O'Brien
Title: President

_____
Denise O'Brien, individually

_____
Tracy Freeman, individually